No. 22,317.

F. P. SNIDER and H. E. SHIPLEY, ·Partners, etc., *Appellants and Appellees,* v. H. T. DAVIDSON (et al.), *Appellee and Appellant.*

SYLLABUS BY THE COURT.

1. GENERAL PARTNERSHIP—*Procuring and Developing Oil and Gas Leases.* The facts established by the findings are held to show the existence of a general partnership, the purpose of which was to secure a block of oil and gas leases, and to drill a test well to develop the field and enable the partnership to dispose of the leases.

2. SAME—*No Abandonment of the Enterprise—Not a Mining Partnership.* In such a situation, where the test well produced only a small amount of gas, the mere abandonment of the well is held not to have been an abandonment of the general enterprise, and, therefore, a finding that the partnership was a mining partnership was error.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed December 6, 1919. Modified.

*E. L. Burton,* of Parsons, for the appellant.
*Elmer W. Columbia,* of Oswego, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was one in replevin to recover casing for a gas and oil well, the petition and the answer alleging that the value of the casing was $2,088. The case was tried by the court, and judgment rendered requiring the return of the property to H. T. Davidson, the defendant, or the payment of $1,100 into court for his use and benefit, and the costs of the action. From this judgment, the plaintiffs appealed, and Davidson has filed a cross appeal, claiming that he was entitled to a judgment for the full value of the property.

Very complete findings of fact were made by the court, which are abundantly supported by the evidence. The essential facts established by the findings are these:

The plaintiffs, F. P. Snider and H. E. Shipley, were partners in the practice of law and also in the oil and gas business. In November, 1916, they formed a partnership with D. A. Skillen for the purpose of procuring oil and gas leases in the field around Oswego, in Labette county, and in order to develop the field arranged for the drilling of a test well. By the agreement, Shipley was to furnish a string of tools for the use of the partnership in drilling the well, the same to remain his property, and to furnish funds for the enterprise; that is to say, such material as might be needed from time to time should be purchased in the name of the parties interested and charged to their account, but Shipley was to guarantee the payment thereof, and it was agreed that all bills should be paid from the gross receipts of the business before any profits were divided between the interested parties. Shipley personally guaranteed payment for the casing to the supply company furnishing it, and informed the company by letter that the partnership was composed of Snider, Shipley & Skillen. Under the agreement between them, Snider & Shipley owned one-half and D. A. Skillen owned one-half. When the well had been drilled to a depth of 550 feet a small flow of gas was discovered. In the meantime, no wages had been paid the parties who did the drilling; Shipley directed that the drilling cease, and the rig was shut down. At Skillen's orders, the casing was pulled from the well; it was subsequently attached in actions brought by creditors of the partnership for labor claims. Sometime afterwards Skillen sold the casing to defendant Davidson, for the sum of $1,600, and executed a bill of sale, to which he signed the partnership name of Skillen and Shipley. Out of the $1,600 Skillen paid $1,100 in satisfaction of the attaching creditors' claims, and the attachment liens were discharged and the actions dismissed. The court made the finding that whatever interest D. A. Skillen had in the casing was conveyed to Davidson by the bill of sale.

Another finding is, that at the time Davidson purchased the casing, Snider, Shipley & Skillen were each members of a mining partnership, of which Snider & Shipley owned one-

half and Skillen the other half, and that the mining partnership had ceased operation under the original agreement for which the partnership was formed, the business not having been operated for more than a month prior to the sale of the casing.

As a conclusion of law, the court held, *first,* that at the time Davidson purchased the casing it was owned by the three partners as cotenants, or as tenants in common, and that Skillen had no authority to sell the whole of it; *second,* that upon the purchase of the interest of Skillen, Davidson became and ever since has been a cotenant with Snider & Shipley, and as such had a right to its possession, and that the plaintiffs had no right of action against him to recover the possession; *third,* that because the mining partnership had received full benefit of the payment to the extent of $1,100 on obligations justly due from the partnership, Davidson was entitled to recover that amount of the value of the casing if the return of the property could not be had.

The plaintiffs, while not conceding that the evidence sustains a finding that a partnership of any kind existed, contend that before the court could hold them liable it was necessary to find the existence of a general partnership.

The sole contention in defendant's cross appeal is that, upon the facts, the court should have held that a general partnership existed, instead of a mining partnership. The controlling question, therefore, in both appeals is, whether the facts show a mining partnership within the rule declared in *Huston v. Cox,* 103 Kan. 73, 172 Pac. 992. In that case it was said that mining partnerships are indulged between coöwners only when they actually engage in working the property; that before actual operations begin, and after actual operations cease, the parties "are simply cotenants, unless, of course, an ordinary partnership has been formed." (p. 76.)

Finding No. 25, that the partnership in the present case was strictly a mining partnership, is a mixed finding of fact and of law. In our opinion, the cross appeal must be sustained. Upon the uncontroverted facts the court should have held that a general partnership existed between the plaintiffs and Skillen. The purpose of the partnership, as appears from the findings, was not only to sink a test well, but to secure and sell a number of leases on other property in the same field;

these leases were actually taken and attempts were made to dispose of some of them. The test well was intended to develop a market for the other leases. It appears, too, that when the casing was pulled from the well it was the intention to move it to some other part of the field, or, at least, to some other place, to be used to further the interests of the general partnership. The well developed gas at 550 feet, and it appears that at one time it was the intention of the partners to market the gas. One finding of the court which is well sustained by the evidence is, that Shipley held himself out to the public as Skillen's partner, and the fact is equally well established that he was at the same time a general partner of Snider, who was bound by his representations. The business for which the partnership was formed had not ceased nor been abandoned, and it was error to hold that a mining partnership existed.

Since there was a general partnership, Skillen, one of the partners, had full authority to sell and dispose of the property. Davidson purchased it for $1,600, and was entitled to whatever profit accrued to him by his purchase. The conceded value of the property is $2,088, and he should have had judgment for that sum, with interest.

The judgment will be modified, and the cause remanded with directions to enter judgment accordingly.